EDWARD H. KUBO, JR. 2499
United States Attorney
District of Hawaii

CANDACE KELLY CA BAR 191473
Assistant U.S. Attorney
Room 6100, PJKK Federal Bldg.
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Candace.Kelly@usdoj.gov

Attorneys for Respondent
UNITED STATES OF AMERICA


          IN THE UNITED STATES DISTRICT COURT

            FOR THE DISTRICT OF HAWAII


RICK VO,                    )  CV. NO. 07-00052 ACK-BMK
                            )  CR. NO. 02-00411 ACK
              Petitioner,   )
                            )
      vs.                   )  UNITED STATES' RESPONSE TO
                            )  MOTION UNDER 28 U.S.C. § 2255
                            )  TO VACATE, SET ASIDE OR CORRECT
UNITED STATES OF AMERICA,   )  SENTENCE BY A PERSON IN FEDERAL
                            )  CUSTODY; EXHIBITS A - C
              Respondent.   )
_____  )

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . i

I.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . 3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 7

     A.  Vo's Claims That AFPD Weight Provided Ineffective
         Assistance of Counsel Are Not Supported by the
         Record . . . . . . . . . . . . . . . . . . . . . 7

         1.  Legal Standards . . . . . . . . . . . . . . 7

     B.  Each of Vo's Allegations of Ineffective Assistance
         of Counsel Lacks Merit as AFPD Weight's
         Representation Was at All Times Professional and
         Reasonable . . . . . . . . . . . . . . . . . . . 9

         1.  AFPD Weight Made a Tactical Decision Not to
             Pursue the Alleged Jury Tampering Incident . . . 9

         2.  AFPD Weight Acted Properly by Not Objecting to
             Vo's Wife's Testimony . . . . . . . . . . . 11

             a.  Statements Concerning Joint Criminal
                 Activity Are Not Protected by the Marital
                 Communications Privilege . . . . . . . . 11

             b.  AFPD Weight Was Executing the Vos' Agreed
                 upon Trial Strategy . . . . . . . . . . 13

     C.  Vo Has Also Failed to Allege and Prove Prejudice as
         a Result of AFPD Weight's Performance . . . . . . . 14

         1.  Alleged Jury Tampering Incident . . . . . . . 15

         2.  Brenda Vo's testimony . . . . . . . . . . . 15

     D.  Vo's Request for an Evidentiary Hearing
         Should Be Denied . . . . . . . . . . . . . . . . 16

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES

Cases                                                              Page(s)

<u>Shah v. United States</u>, 878 F.2d 1156 (9th Cir.,
     <u>cert. denied</u>, 493 U.S. 869 (1989) . . . . . . . . . 16

<u>Shraiar v. United States</u>, 736 F.2d 817 (1st Cir. 1984) . . . 16

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984) . . . . . . . . 7

<u>Trammel v. United States</u>, 445 U.S. 40 (1980) . . . . . . . 12

<u>United States v. Ameline</u>, 789 F.3d 1073 (9th Cir. 2005) . . . . 2

<u>United States v. Bolzer</u>, 556 F.2d 948 (9th Cir. 1977) . . . . 12

<u>United States v. Figueroa-Paz</u>, 468 F.2d 1055 (9th Cir. 1972) 12

<u>United States v. Lustig</u>, 555 F.2d 737 (9th Cir. 1977),
     <u>cert. denied</u>, 434 U.S. 926 (1978) . . . . . . . . . . 12

<u>United States v. Marashi</u>, 913 F.2d 724 (9th Cir. 1990) . . 12-13

<u>United States v. Montgomery</u>, 384 F.3d 1050 (9th Cir. 2004) . 12

<u>United States v. Quan</u>, 789 F.2d 711 (9th Cir.),
     <u>cert. denied</u>, 478 U.S. 1044 (1986) . . . . . . . . . . 16

<u>United States v. Schaflander</u>, 743 F.2d 714 (9th Cir. 1984),
     <u>cert. denied</u>, 470 U.S. 1058 (1985) . . . . . . . . . . 16

<u>Wolfle v. United States</u>, 291 U.S. 7 (1934) . . . . . . . . 12

<u>Statutes and Rules</u>

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . Passim

Federal Rules of Evidence 501 . . . . . . . . . . . . . . . 11

i

<u>UNITED STATES' RESPONSE TO MOTION UNDER
28 U.S.C. § 2255 TO VACATE, SET ASIDE OR
CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY</u>

The United States of America, by its undersigned

counsel, hereby responds to Rick Vo's ("Vo") motion to vacate,

set aside, or correct sentence under 28 U.S.C. § 2255.

I.  <u>PROCEDURAL BACKGROUND</u>

On October 9, 2002, a federal grand jury in the

District of Hawaii returned a two-count indictment charging Vo,

along with his wife and co-defendant, Brenda Maria Cooper Vo,

with: (1) conspiring with each other to distribute and possess

with intent to distribute in excess of 50 grams of

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846;

and (2) aiding and abetting each other in the possession with

intent to distribute in excess of 50 grams of methamphetamine, in

violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

On April 17, 2003, Co-defendant Brenda Maria Cooper Vo

plead guilty to Count 1 of the indictment and was sentenced to

100 months imprisonment.

On April 24, 2003, a superseding indictment was filed

charging Vo with the same offenses as in the original indictment,

but extending the time frame of the conspiracy and adding certain

overt acts.

On May 27, 2003, a jury returned a guilty verdict with

respect to Count 2.  The jury indicated that it was deadlocked as

to Count 1, and the Court declared a mistrial with respect to

Count 1.  A true and correct copy of the transcript of day 2 of the jury trial is attached as Exhibit A.  A true and correct copy of the transcript of day 3 of the jury trial is attached as Exhibit B.

On December 16, 2003, judgment was entered and Vo was sentenced to 262 months imprisonment, followed by 10 years supervised release, and ordered to pay a $100 special assessment. Vo filed an appeal on December 18, 2003.

On February 11, 2004, Vo moved to dismiss Count 1 of the indictment for a violation of his right to a speedy trial. The United States did not object to Vo's motion to dismiss, thus, on February 18, 2004, the Court dismissed Count 1 with prejudice.

On August 9, 2005, the Ninth Circuit affirmed the district court's judgment and remanded the case solely for re-sentencing pursuant to United States v. Ameline, 789 F.3d 1073 (9th Cir. 2005).  On September 21, 2005, this Court declined to re-sentence Vo and adopted the judgment of December 15, 2003.

On January 30, 2007, Vo filed the instant Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody that was deemed to be timely filed.  In his motion, Vo claims that Assistant Federal Public Defender ("AFPD") Michael A. Weight, his attorney in the underlying criminal case, provided him with ineffective assistance of counsel.  Vo claims that his counsel failed to pursue a

"confirmed jury tampering incident" and also failed to object at trial to his wife's testimony on the basis of the marital communications privilege.  Vo 2255 Motion at ¶ 12.

In order to respond to Vo's motion, the United States filed a motion with this Court seeking a judicial finding that, by filing the instant motion, Vo has waived his attorney-client privilege with AFPD Michael A. Weight.  On April 16, 2007, the Court issued an order finding that Vo waived his attorney-client privilege as to the instant § 2255 proceedings.

On April 2, 2007, Vo filed a Motion for an Evidentiary Hearing on his § 2255 Motion.

II.  FACTUAL BACKGROUND

On October 3, 2002, the Federal Bureau of Investigation ("FBI") in Honolulu was notified by an employee of a Mail Boxes, Etc. store that a suspicious package had been dropped off for shipment to California via Federal Express.  Exhibit A at 2-30. The box had been brought to the Mail Boxes, Etc. store by Vo's wife, Brenda Maria Cooper Vo.  Exhibit A at 2-234.  Vo had asked her to mail the box to their home in California and told her to address the box to "Gabriella Vo," his 12-year old daughter. Exhibit A at 2-217; 2-233 - 2-234.  Vo told his wife to use a fictitious name, "Linda Chang," as the sender of the package and to send the box via overnight delivery.  Exhibit A at 2-235. Brenda Vo told the Mail Boxes, Etc. employee that the package

3

contained hair products.  Exhibit A at 2-191.  Pursuant to store policy, the Mail Boxes, Etc. employee opened the box to ensure that it did not contain any aerosol products.  Exhibit A at 2-194.  Upon opening the box, the store employee's suspicions were raised when it was discovered that the box did not, in fact, contain any hair products.  Exhibit A at 2-195.

On October 4, 2002, the FBI obtained a search warrant from a United States Magistrate Judge and discovered that the box contained four gallon-sized bags of an off-white crystalline substance that tested positive for methamphetamine.  Exhibit A at 2-32; 2-34 - 2-36.  On October 5, 2002, the FBI coordinated with the Drug Enforcement Administration ("DEA") to effect a controlled delivery of the box to the addressee, Gabriella Vo, at the Vos' residence in California.  Exhibit A at 2-38.  On October 5, 2002, a DEA agent, posing as a Federal Express employee, delivered the package to Vo's residence.  Exhibit A at 2-96 - 2-97.  Vo's daughter, Gabriella Vo, answered the door and signed for the package.  Exhibit A at 2-97.  Shortly thereafter, the transmitter that had been placed in the package went off and DEA agents executed a search warrant on the residence.  Exhibit A at 2-79 - 2-80.

On October 6, 2002, Vo and his wife were arrested at the Honolulu Airport.  The Vos were arraigned and indicted in October 2002.

4

On April 17, 2003, Brenda Vo, pursuant to a plea agreement, pled guilty to Count 1 of the indictment charging her with conspiring with Vo to distribute and to possess with intent to distribute more than 50 grams of methamphetamine.

At Vo's trial, Brenda Vo testified that in late 2001, Vo asked her to send a box from California to Honolulu.  Exhibit A at 2-217 - 2-218.  Brenda Vo initially declined to send the box for Vo because he did not want to tell her what the box contained.  Exhibit A at 2-218.  When Brenda Vo asked Vo what was in the box, Vo told her not to worry about it.  Exhibit A at 2-218.  Brenda Vo testified that although Vo did not want to tell her what was in the box, she had a feeling about what it contained.  Exhibit A at 2-218.  Several days later, Vo once again asked Brenda Vo to mail the box.  Exhibit A at 2-218 - 2-219.  Brenda Vo later agreed to send the box for Vo and noted that Vo handled the box in a manner that would avoid leaving his fingerprints on the package.  Exhibit A at 2-219.  The sender's name was already written on the box when Vo gave Brenda Vo the box.  Exhibit A at 2-220.  The sender's name was "Linda Chang." Exhibit A at 2-220.

Brenda Vo testified that around October 2001, Vo asked her to mail another box to Honolulu.  Exhibit A at 2-220 - 2-221. Brenda Vo mailed that box to an address in Honolulu as requested.

Exhibit A at 2-221.  As before, the sender's name on the box was "Chang."  Exhibit A at 2-220.

Brenda Vo testified that sometime in 2002, prior to sending the box from the Mail Boxes, Etc. store in Hawaii to her residence in California, Brenda Vo saw Vo's brother, Khanh Vo, have a United Parcel Service ("UPS") agent pick up a box at Vo's residence in California.  Exhibit A at 2-222.  Brenda Vo saw Khanh Vo carry the box to the UPS agent at the front door. Exhibit A at 2-222.  Brenda Vo saw that Khanh Vo was carrying the box without using his fingers.  Exhibit A at 2-222.

With respect to the box sent from the Mail Boxes, Etc. store in Hawaii, Brenda Vo testified that in October 2002, Vo asked her to mail another box.  Exhibit A at 2-232 - 2-233. Brenda Vo asked Vo why he wouldn't mail the box himself.  Exhibit A at 2-233.  Vo told her that it wouldn't look good if he mailed it out.  Exhibit A at 2-233.  Brenda Vo told Vo that she did not want to mail the box since she was on probation and didn't want to risk getting in trouble.  Exhibit A at 2-233.  In response, Vo told her that she wouldn't get in trouble and that she should stop worrying about her probation.  Exhibit A at 2-233.  Vo told her to address the box to Gabriella Vo at their house in California.  Exhibit A at 2-233 - 2-234.  Vo also instructed her to use "Linda Chang" as the sender's name.  Exhibit A at 2-235.

III. <u>ARGUMENT</u>

A district court may grant relief under § 2255 if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.

Vo raises two grounds in his § 2255 motion: (1) that he was denied effective assistance of counsel because his counsel failed to pursue an alleged jury tampering incident; and (2) that he was denied effective assistance of counsel because his counsel failed to object to his wife's, Brenda Maria Vo's, testimony.

A.   Vo's Claims that AFPD Weight Provided Ineffective
     <u>Assistance of Counsel Are Not Supported by the Record</u>

     1.   <u>Legal Standards</u>

The Supreme Court, in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), set forth a two-prong test for determining whether a criminal defendant received ineffective assistance of counsel. In order for a criminal defendant's sentence to be overturned based on ineffective assistance of counsel, the defendant must first prove that the performance of counsel, considering all the circumstances, was so deficient that he or she was not functioning as "counsel" as guaranteed under the Sixth Amendment. Second, the defendant must prove that the

deficient performance prejudiced the defendant by depriving him
of a fair trial.  Id. at 691-92.  However, a court need not
determine whether counsel's performance was deficient before
examining the prejudice suffered by the defendant as a result of
the alleged deficiencies.  Id. at 697.

        To show that counsel's performance fell below an
objective standard of reasonableness, the defendant must identify
the acts or omissions of counsel that are alleged not to have
been the result of reasonable professional judgment.  Id. at 690.
The court must then determine whether in light of all the
circumstances, the identified acts or omissions were outside the
wide range of professionally competent assistance.  Id.  In
making that determination, counsel is strongly presumed to have
rendered adequate assistance and made all significant decisions
in the exercise of reasonable professional judgment.  Id.

        Even if the court finds that counsel's performance was
deficient, relief cannot be granted absent a showing of
prejudice.  To affirmatively prove prejudice, the defendant must
show that there is a reasonable probability that, but for
counsel's conduct, the result of the proceeding would have been
different.  Id. at 694.  According to Strickland, "[a] reasonable
probability is a probability sufficient to undermine confidence
in the outcome."  Id.

8

Indeed, the defendant who raises a claim of ineffective assistance of counsel has a very heavy burden to bear.  As the court stated in <u>Strickland</u>: "Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id.</u> at 689.

B. Each of Vo's Allegations of Ineffective Assistance of Counsel Lacks Merit as AFPD Weight's Representation Was at All Times Professional and Reasonable

As mentioned above, Vo claims that AFPD Weight failed to pursue an alleged jury tampering incident and also failed to object to the testimony of his wife.  However, in the instant case, there is absolutely no evidence that AFPD Weight's performance fell below an objective standard of reasonableness under prevailing norms.

1. AFPD Weight Made a Tactical Decision Not to Pursue the Alleged Jury Tampering Incident

The alleged "jury tampering incident" involved a juror who reportedly overheard a DEA witness while having lunch in the Federal Building cafeteria.  Exhibit B at 3-3.  The juror indicated that he overheard the DEA witness, who was also dining in the cafeteria, remark that one of the jurors had been frowning.  Exhibit B at 3-3.  This incident was brought to the

9

Court's attention and the Court instructed counsel to caution each of their witnesses to use discretion when eating and conversing in the cafeteria.  Exhibit B at 3-4.  The Court then inquired if Vo's counsel wanted to do anything further regarding the matter.  Exhibit B at 3-4.  A true and correct copy of the declaration of Michael A. Weight is attached as Exhibit C.  AFPD Weight replied that he thought the matter was best left alone so as not to draw further attention to the incident.  Exhibit B at 3-5; Exhibit C at ¶ 12.  The Court then stated, "I don't think there's been any harm at this point."  Exhibit B at 3-5.

As indicated by the district judge's comment, the potential prejudicial effect of a government agent and witness commenting that a juror frowned is not readily apparent.  Indeed, in his motion, Vo fails to articulate what harm this might have inflicted.  Vo merely states that this incident "eventually affected the jury's verdict."  Vo 2255 Motion at ¶ 12.

Vo also complains that AFPD Weight did not "pursue" this incident, yet fails to suggest what he might have done to protect against this undefined potential harm.  Vo 2255 Motion at ¶ 12.

In the absence of any clear potential harm or any obvious steps available to "pursue the matter," AFPD Weight's decision to take no further action was the result of the exercise of his reasonable professional judgment and clearly falls within

10

the range of reasonable professional assistance.  As the Supreme Court stated in <u>Strickland</u>, "[b]ecause advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."  <u>Id.</u> at 681.

### 2. AFPD Weight Acted Properly by Not Objecting to Vo's Wife's Testimony

The second basis of Vo's ineffective assistance of counsel claim is that AFPD Weight failed to object to the testimony of Brenda Vo.  Vo asserts that AFPD Weight should have objected because his wife's testimony was subject to the marital communications privilege.

AFPD Weight's failure to object to Brenda Vo's testimony did not constitute ineffective assistance of counsel for two reasons: (a) an objection to Brenda Vo's testimony would have been overruled because her testimony consisted of statements made during the course of joint criminal activity and therefore, was not protected by the marital privilege; and (b) AFPD Weight was executing the trial strategy agreed upon by the Vos and their respective counsel.

### a. Statements Concerning Joint Criminal Activity Are Not Protected by the Marital Communications Privilege

Federal Rule of Evidence 501 provides, in part, that "the privilege of a witness [or] person . . . shall be governed

by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." The Supreme Court has recognized two privileges that arise from the marital relationship. The first permits a witness to refuse to testify against his or her spouse. <u>See Trammel v. United States</u>, 445 U.S. 40, 53 (1980); <u>United States v. Bolzer</u>, 556 F.2d 948, 951 (9th Cir. 1977). The second marital privilege, upon which Vo relies, bars testimony concerning private statements between spouses. <u>See Wolfle v. United States</u>, 291 U.S. 7, 14 (1934); <u>United States v. Lustig</u>, 555 F.2d 737, 749 (9th Cir. 1977), <u>cert. denied</u>, 434 U.S. 926 (1978). The privilege extends only to words and acts intended as a communication to the other spouse. The marital communications privilege can be asserted by either spouse to prevent testimony regarding communications between spouses. <u>United States v. Montgomery</u>, 384 F.3d 1050, 1058-59 (9th Cir. 2004). The privilege will be waived if an objection is not timely made. <u>Id.</u> at 1057; <u>United States v. Figueroa-Paz</u>, 468 F.2d 1055 (9th Cir. 1972).

The marital communications privilege is subject to an important exception. The privilege does not shield marital confidences when those confidences concern joint criminal activity. <u>United States v. Marashi</u>, 913 F.2d 724, 731 (9th Cir. 1990).

In this case, the conversations testified to by Brenda Vo occurred during the period of the conspiracy charged in Count 1 of the superseding indictment and detail the overt acts charged in Count 1. Specifically, Brenda Vo's statements concern packages Vo was sending to Hawaii under the fictitious name, "Linda Chang." Brenda Vo testified that she did not want to send the packages and that she believed she knew what the packages contained because Vo did not want to identify the contents. Further, Brenda Vo testified that Vo told her not to worry about it and that Vo handled the packages so as not to leave any fingerprints.

The communications Brenda Vo testified about were clearly made in furtherance of joint criminal activity. Accordingly, had AFPD Weight objected to Brenda Vo's testimony, her statements regarding Vo's statements and activities would have been admissible and not subject to the marital communications privilege. United States v. Marashi, 913 F.2d 724, 731 (9th Cir. 1990). Thus, AFPD Weight's alleged deficient performance did not prejudice Vo.

      b.   AFPD Weight Was Executing the Vos' Agreed upon Trial Strategy

Even if an objection to Brenda Vo's testimony could have been sustained, AFPD Weight's failure to object did not fall below an objective standard of reasonableness because he was executing the Vos' trial strategy. The Vos had two minor

13

children and were veritably concerned about the possibility that they would both be convicted and receive long prison sentences, leaving no one to care for their children.  Exhibit C at ¶¶ 5-6. Brenda Vo was especially at risk and faced the possibility of a life sentence due to her prior drug convictions.  Exhibit C at ¶ 7.

As a result, the Vos, along with their respective counsel, came up with a trial strategy that involved Brenda Vo testifying against Vo at trial in the hopes of Brenda Vo receiving maximum sentencing consideration for her cooperation. Exhibit C at ¶ 8.  Vo understood that as a result of this trial strategy, he risked facing a conviction on one or both counts and also risked facing a long prison sentence.  Exhibit C at ¶ 8. Thus, it was part of the Vos' joint trial strategy to have Brenda Vo testify against Vo at trial.  AFPD Weight, by failing to object to Brenda Vo's testimony, was merely implementing the trial strategy that both Vo and his wife (and her counsel) had devised and agreed upon.  Respecting and carrying out a client's trial strategy can hardly be said to fall outside the range of reasonable professional judgment.

C.   Vo Has Also Failed to Allege and Prove Prejudice as a Result of AFPD Weight's Performance

Even if AFPD Weight's performance fell below an objective standard of reasonableness, which it did not, Vo has

14

failed to prove prejudice as a result of his allegations of
ineffectiveness.

   1.   Alleged Jury Tampering Incident

      As previously discussed, the alleged jury tampering
incident involved a single juror who reportedly overheard a DEA
witness remark that one of the jurors was frowning.  There is no
evidence or basis for Vo to allege that but for AFPD Weight's
decision not to pursue this incident, there is a reasonable
probability that he would not have been convicted.  It is unclear
what, if any, effect this overheard remark could have had on the
jury's deliberations.  Regardless, the Government had substantial
evidence against Vo.

   2.   Brenda Vo's testimony

      With respect to AFPD Weight's alleged ineffectiveness
for failing to object to Brenda Vo's testimony, Vo has likewise
failed to show that the result of the proceeding would have been
different but for counsel's error.  As discussed above, an
objection to Brenda Vo's testimony would have been overruled
because her testimony consisted of statements made during the
course of joint criminal activity.  Therefore, an objection by
AFPD Weight would have had no effect on the outcome of the
proceeding.

15

D.   Vo's Request for an Evidentiary Hearing
     Should Be Denied

Section 2255 provides that a court shall hold an evidentiary hearing on a prisoner's § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Ninth Circuit has held, however, that the standard for an evidentiary hearing is whether the prisoner has made specific factual allegations, which if true, state a claim on which relief can be granted. United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984), cert. denied, 470 U.S. 1058 (1985). Mere conclusory statements are insufficient to require an evidentiary hearing. Id. at 721. The allegations of the prisoner need not be accepted as true to the extent they are contradicted by the record in the case. United States v. Quan, 789 F.2d 711, 715 (9th Cir.), cert. denied, 478 U.S. 1044 (1986); Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984). In addition, no hearing is required where the movant's allegations, when viewed against the records, either fail to state a claim for relief or are so palpably incredible as to warrant summary dismissal. Shah v. United States, 878 F.2d 1156, 1158 (9th Cir.), cert. denied, 493 U.S. 869 (1989); Shaflander, 743 F.2d at 717; Quan 789 F.2d at 715.

16

IV.    <u>CONCLUSION</u>

  In the instant case, Vo has failed to make a <u>prima</u> <u>facie</u> case for any of his § 2255 claims as he has not articulated how counsel's performance was deficient and how counsel's alleged deficient representation prejudiced him.  The allegations in Vo's § 2255 motion do not state a claim upon which relief can be granted.  For the foregoing reasons, the United States requests that Vo's § 2255 motion be denied in its entirety without an evidentiary hearing.

  DATED:  May 15, 2007, at Honolulu, Hawaii.

       EDWARD H. KUBO, JR
       United States Attorney
       District of Hawaii


       By   /s/ Candace Kelly
        CANDACE KELLY
        Assistant U. S. Attorney

       Attorneys for Plaintiff
       UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served by First Class Mail:

       Mr. Rick Vo
       TCI #95795-012
       P.O. Box 7001
       Taft, CA    93268

       DATED:  May 15, 2007, at Honolulu, Hawaii.


                 /s/ Dawn M. Aihara