RECEIVED
CLERK U.S. DISTRICT COURT
JUN 0 4 2007
12:05 pm
DISTRICT OF HAWAII

E X H I B I T : A

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) C.A. NO. 03-10696 |
| | ) |
| Plaintiff-Appellee, | ) D.C. NO. CR-02-0041 ACK |
| | ) (District of Hawaii) |
| vs. | ) |
| | ) |
| RICK K. VO, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

**DEFENDANT-APPELLANT RICK K. VO'S OPENING BRIEF**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII
The Honorable Alan C. Kay
United States District Judge

PETER C. WOLFF, JR.
Federal Public Defender
District of Hawaii
MICHAEL A. WEIGHT
Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii  96850-5269
Telephone:  (808) 541-2521
Facsimile:   (808) 541-3545

Attorney for Defendant-Appellant
RICK K. VO

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................. iii

JURISDICTIONAL STATEMENT ........................................... 1

BAIL STATUS ................................................................ 1

ISSUES PRESENTED ........................................................ 2

STATEMENT OF THE CASE ................................................ 4

STATEMENT OF THE FACTS .............................................. 7

SUMMARY OF ARGUMENT ............................................... 20

ARGUMENT .................................................................. 23

I.    Contrary to the STA's mandate, the government did not bring
Vo to trial within seventy days of his having been indicted; the
district court therefore wrongly denied Vo's motion to dismiss. ...... 23

    A.    Standard of Review ............................................. 23

    B.    Discussion ....................................................... 23

II.    Vo's wife's testimony concerning marital communications
constitutes plain error. ................................................. 43

    A.    Standard of Review ............................................. 43

    B.    Discussion ....................................................... 44

## **ISSUES PRESENTED**

I.   Since trial delay did not result from the government's detention motion or its 'reimbursement' motion, and since neither "hearing days" nor the eight-day period running between pretrial conferences constitute excludable events under the Speedy Trial Act did the district court wrongly deny Vo's motion to dismiss, given that, absent any of the foregoing being "excludable delay" under the act, seventy-two days -- two days over the act's seventy-day mandate -- elapsed between the filing of the government's indictment and the filing of Vo's motion to dismiss?

II.  Did plain error occur when Vo's wife testified about marital communications without having obtained vo's waiver of his marital communications privilege?

III. Was evidence of Vo's prior state court convictions -- which occurred over thirteen years prior to the present trial, which concerned a different drug, in a strikingly different amount, than that at issue here, which involved different criminal conduct,

2

limit it imposes for trial to begin. Since the government's indictment against Vo should have been dismissed under the STA, the district court was wrong to deny Vo's motion to dismiss. That being so, Vo urges this Court to vacate the district court's judgment, reverse the district court's order denying his motion to dismiss, and remand this matter with instructions to enter an order granting Vo's motion and for further proceedings as to whether dismissal should be with or without prejudice.

## II.  Vo's wife's testimony concerning marital communications constitutes plain error.

### A.  Standard of Review

This Court reviews a district court's findings regarding the applicability of marital privileges for clear error. See United States v. Murphy, 65 F.3d 758, 761 (9th Cir. 1995).

Where a right is forfeited in the trial court because it was not raised at all (as opposed, that is, to having been raised and waived), this Court may review for plain error. See United States v. Perez, 116 F.3d 840, 845 (9th Cir. 1997) (*en banc*). This requires that "[t]here ... be (1) error, (2) that is plain, and (3) that affects substantial rights.'" United States v. Garcia-Guizar, 160 F.3d

511, 516 (9th Cir. 1998) (quoting Johnson v. United States, 520 U.S. 461, 466-467 (1997)). 'Error' does not include waived errors, and to be 'plain,' the error must be "clear" or "obvious." United States v. Olano, 507 U.S. 725, 732-734 (1993). If such a clear and obvious error was prejudicial, in that it affected the outcome of the proceedings, then it will have 'affected substantial rights' of the defendant. See id. at 735. If all three of these conditions are met, then this Court may "exercise its discretion to notice the forfeited error," so long as, that is, the error "'seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'" Garcia-Guizar, 160 F.3d at 516 (quoting Johnson, 520 U.S. at 466-467); see also Olano, 507 U.S. at 736; United States v. Buckland, 289 F.3d 558 (9th Cir. 2002) (*en banc*).

**B.   Discussion**

Federal Rule of Evidence Rule 501 generally provides that "the privilege of a ... person ...shall be governed by the principles of the common law[.]" FRE Rule 501. Federal common law, consequently, governs the scope and applicability of a claimed privilege. See, e.g., United States v. Lustig, 555

F.2d 737, 747 (9th Cir. 1977). "Federal courts recognize two distinct privileges arising out of the marital relationship," only one of which is relevant here.[11] Id.

The 'marital communications privilege,' upon which Vo relies, reaches all "confidential marital communications" that spouses make to each other during their marriage. Lustig, 555 F.2d at 747. The marital communications privilege adheres to "communicative" and "confidential in nature" matters, and, thus, "applies to utterances or expressions" by which one spouse "intend[s] to convey a message to the other." Id. at 748. Testimony concerning "acts" or about conduct that the other spouse engaged in, insofar as such testimony does not implicate "communications," is outside the ambit of the marital communications privilege. Id.; see also, e.g., Trammel, 445 U.S. at 51-53; Hawkins v. United States, 358 U.S. 74, 76-79 (1958); Pereria v. United States, 347 U.S. 1, 6-7 (1954); United States v. Marashi, 913 F.2d 724, 729-730 (9th Cir. 1990). Be that as it may, all marital communications "are presumptively confidential," and, thus, "the government has the burden of demonstrating that they are not." Marashi, 913 F.2d at 730.

---

[11] The 'spousal privilege' (occasionally denoted by this Court as the "anti-marital facts" privilege), broadly "bars one spouse from testifying against the other" as to any matter at all; it is held and, thus, may only be invoked by the testifying spouse. Lustig, 555 F.2d at 747; see also Trammel v. United States, 445 U.S. 40, 53 (1980). Vo, accordingly, cannot rely on this privilege.

Vo acknowledges that there is "a narrow exception" to marital communications privilege. Marashi, 913 F.2d at 730. "[C]ommunications having to do with present or future crimes in which both spouses are participants" fall outside the privilege; in other words, "the marital communications privilege does not apply to statements made in furtherance of joint criminal activity." Id. at 730-731. In Marashi, for example, this Court held that the husband's directive to his wife to "help him underreport income on their *joint* income tax return," where, moreover, the wife "freely did so," rendered the husband's statements to her admissible under this "partnership in crime" exception to the marital communications privilege, since those statements were made in furtherance of their joint, and freely undertaken, criminal acts. Id.

Vo also acknowledges that he forfeited his marital communications privilege. The Supreme Court, in Olano, articulated the difference between a forfeited right, which may be corrected for plain error under Federal Rule of Criminal Procedure ("FRCrP") Rule 52(b), and a waived right, which may not. See Olano, 507 U.S. at 731-734. Forfeiture, the Court explained, occurs when the defendant simply "fail[s] to make the timely assertion of a right[.]" Id. at 733. Waiver, on the other hand, occurs when there "is [an] intentional

relinquishment or abandonment of a known right." Id. (internal quotation marks omitted). Unlike the waiver, forfeiture "does not extinguish an 'error.'" Id. at 732-734. As such, error implicating a forfeited right may be noticed and corrected, resulting in reversing or setting aside a criminal judgment. Id. It is, in other words, only waived rights that are beyond the pale of judicial review on appeal, not forfeited ones: "[i]f a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection." Id. at 733-734.

Vo did not waive his right to prevent his wife from testifying as to communications he and she made to each other (while no one else was present) during the course of the their marriage. Indeed, there is no indication that he was ever told -- and, thus, no basis on which to infer he knew -- he had such a right. The only pretrial discussion of "marital privilege" occurred between the court and counsel during a status conference. [See ER at 35 (Tr. 4/25/03 at 12).] While Vo was present during that conference, neither the spousal privilege nor the marital communications privilege were explained to him; much less can it be drawn from Vo's silence when the court briefly mentioned the "marital privilege" that he intentionally relinquished or abandoned his right

47

to prevent Brenda from testifying about marital communications. And given the government's representation at the conference (that it would adduce only testimony from Brenda about "[c]riminal activities"), even if Vo can be imputed with having known the scope and applicability of the marital communications privilege, the government led him to believe it was not applicable. Vo, therefore, did not waive, but only forfeited his marital communications privilege, insofar as he simply failed to timely invoke it during Brenda's unanticipated testimony relating marital conversations he had with her. As such, any error in allowing the government to adduce testimony from Brenda about marital communications may be -- and, as discussed below, should be -- addressed and corrected as plain error under FRCrP Rule 52(b).

Brenda testified as to numerous statements that she made to Vo and that he purportedly made to her. All of these statements were made while they were married to each other, which, incidentally, they still are. Nor is there any indication in the record that these statements were made in the presence of a third person.

Brenda testified as to statements she and Vo made to each other about a box she mailed from California to Hawaii in September of 2001. [ER at 118-119 (Tr. 5/15/03 at 217-218).] Brenda testified as to statements she and Vo

made to each other about a box she mailed from California to Hawaii in October of 2001. [See ER at 121-121 (Tr. 5/15/03 at 220-221).] And Brenda testified as to statements she and Vo made to each other about a person that the government referred to as "Crash Om," whom the government sought the jury to infer was sending Vo money in exchange for drugs. [See ER at 165-167 (Tr. 5/16/03 at 33-35).]

All of these communications are within the marital communications privilege. Brenda related to the jury specific statements Vo had made to her and that she had made to Vo about each of the forgoing matters. See Marashi, 913 F.2d at 729. These communications were made while she and Vo were legally married to each other; nor, at the time, were they *irreconcilably* separated, such that their marital status would be implicitly undermined. See id. at 729-730. And, finally, none of these statements were made "before, or likely to overheard by, third parties." Id. at 730.

Nor does the narrow 'partnership in crime' exception apply to these marital communications. The government failed to adduce any evidence supporting the inference, though it invited the jury to speculate, that the mailing of either box in the fall of 2001 was criminal. Nor was there any evidence adduced indicating what either box contained. Similarly, the government

49

offered no evidence indicating who "Crash Om" actually was and what his or her relationship with Brenda and Vo may have been. Much less did it adduce any evidence suggesting that Brenda and Vo were "partners in crime" with each other and "Crash Om."

Brenda also testified about statements she and Vo made to each other about the box that she mailed from Hawaii to California in October of 2002, which the government intercepted, and which contained methamphetamine. As to this box, Brenda testified to no less than four, if not five or six depending on one's reckoning, distinct conversations she and Vo had about it. [See ER at 133-136 (Tr. 5/15/03 at 232-235); id. at 142-147 (Tr. 5/16/03 at 10-15); id. at 246 (Tr. 5/20/03 at 61).] Brenda, however, claimed that she was reluctant to (i.e., did not freely) mail the box or make telephone calls checking on its delivery status. [See ER at 134 (Tr. 5/15/03 at 233 (Brenda testifies "I didn't want to mail it out")); id. at 144 (Tr. 5/16/03 at 12 (Brenda testifies, "I didn't want to call" and check on the status of the box's delivery)); id. at 146 (Tr. 5/16/03 at 14 (same)).] Nor did she ever assert that she had seen or been told what was in the box.

Under these circumstances, Vo submits, the narrow 'partnership in crime' exception to the marital communications privilege does not apply to any

50

statements she and Vo made to each other concerning the box containing methamphetamine that she mailed in October of 2002. Brenda had no knowledge at the time she mailed this box and when the alleged conversations with Vo took place, that she was engaging in any crime at all, much less freely engaging in a joint criminal venture with her husband. Hence, her statements -- as well as those she attributed to her husband -- were not made in furtherance of a joint criminal venture. And for what it is worth, she only reluctantly mailed and made subsequent calls about the box; thus, she should not be deemed to have "freely" participated in any "joint" criminal venture.

Brenda's testimony about marital communications was undoubtedly prejudicial. The government adduced evidence that a controlled substance had been in the box that she claimed Vo ordered her to mail in October, 2002. While it made much ado about other boxes that had been sent between California and Hawaii, and, too, invited the jury to speculate that the contents of those other boxes was money or methamphetamine, it offered *no* evidence that indicated, must less established, what was in those boxes. Similarly, the government also made much ado about "Crash Om," asking the jury to speculate -- again, without any grounding in its evidence -- that money Brenda claimed that Vo had asked her to collect from Om was drug money.

51

But, besides Brenda's testimony about Om and evidence suggesting that Om's phone number was saved in both Vo's and Brenda's cell phones, the government neglected to adduce any evidence from which a reasonable inference could be drawn as to what Om's relationship to Vo and Brenda was or what he owed Vo money for having received.

In sum, the *only* evidence that the government adduced connecting Vo with the box Brenda mailed in October of 2002 -- in other words, the only evidence linking Vo to any alleged criminal activity undertaken by Brenda, and, thus, evincing that he aided and abetted her -- was Brenda's testimony narrating the content of marital communications. This testimony, then, was surely prejudicial, for without it, the government could not have obtained its conviction on the aiding and abetting charge. Moreover, her testimony was prejudicial because the government used the marital communications she testified about to argue Vo's greater complicity in drug dealing and to downplay Brenda's role in the affair. As such, the introduction of Brenda's testimony in the absence of the requisite waiver from Vo affected his substantial rights. See, e.g., Olano, 507 U.S. at 530-536.

Allowing a conviction to stand, where that conviction was obtained solely on the basis on testimony that should not have been before the jury,

cannot but affect the integrity and fundamental fairness of our judicial process. That being so, Vo urges this Court to recognize plain error in the introduction of Brenda's testimony relating marital communications.[12]

### III. Evidence concerning Vo's prior convictions was inadmissible; the district court therefore erred in denying Vo's motion in limine seeking to preclude the government from adducing such evidence at trial.

#### A. Standard of Review

Generally speaking, this Court reviews the district court's evidentiary rulings for an abuse of discretion. See United States v. Danielson, 325 F.3d 1054, 1075-1076 (9th Cir. 2003) (FRE Rule 404(b) (prior conviction)); United States v. Gonzalez-Torres, 309 F.3d 594, 601 (9th Cir. 2002) (FRE Rule 403); United States v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002) (FRE Rule 402). Reversal for an abuse of discretion, where the error complained of does not implicate the Constitution, will only be had if it was

---

[12] In the event that this Court, however, does not believe that this error rises to the level of plain error and, moreover, remands this case for further proceedings under any other argument Vo advances in this appeal, Vo requests that this Court refrain from ruling on this issue and allow him to raise it in the district court on remand, so as to properly preserve it for this Court's review.