IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICK VO, | ) Civil No. 07-00052 ACK-BMK<br>) Criminal No. 02-00411 ACK 01 |
| Petitioner, | ) |
| vs. | ) |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**ORDER DENYING VO'S SECTION 2255 PETITION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE**

**PROCEDURAL BACKGROUND**

Petitioner Rick Vo filed a petition pursuant to 28 U.S.C. § 2255 challenging his sentence of 262 months imprisonment imposed in December 2003, upon his conviction after a jury trial for a drug trafficking offense. Vo's conviction was affirmed on direct appeal to the Ninth Circuit in an opinion filed June 27, 2005. The Ninth Circuit granted a limited remand to the District Court for the sole purpose of sentencing consistent with United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005). On September 21, 2005, the District Court issued an order declining to re-sentence Vo pursuant to Ameline and adopting the judgment of December 15, 2003. On November 28, 2005, the United States Supreme Court denied Vo's petition for a writ of certiorari.

In his § 2255 petition, Vo claims that he did not

receive effective assistance of counsel at trial because his attorney, Michael A. Weight, failed to pursue an alleged jury tampering incident and failed to object to the testimony of Vo's wife. On April 2, 2007, Petitioner Vo filed a Motion for an Evidentiary Hearing on his Section 2255 Motion.  On April 16, 2007, the Court issued an Order finding that Petitioner Vo had waived his attorney-client privilege with Weight for communications involving or related to Vo's ineffective assistance of counsel allegation.

On May 15, 2007, the Government filed a Response to Vo's Section 2255 Petition.  On June 4, 2007, Petitioner Vo filed his Reply to the Government's Response.

## FACTUAL BACKGROUND

On October 3, 2002, an employee of a Mail Boxes, Etc. store in Honolulu notified the Federal Bureau of Investigation ("FBI") that a suspicious package had been dropped off for delivery to California via Federal Express. See Government Response Exh. "A" at 2-30.  Petitioner Vo's wife, Brenda Maria Cooper Vo, had brought the box to the Mail Boxes, Etc. store at the request of Petitioner Vo.  Brenda Vo used a fictitious name, "Linda Chang," and addressed the package to Petitioner Vo's minor daughter at their home in California.  Brenda Vo told the employee at Mail Boxes, Etc. that the box contained hair products.  The employee opened the box, pursuant to store policy,

to check whether the box contained aerosol products.  The employee became suspicious when he discovered the box contained no hair products.

On October 4, 2002 the FBI obtained a search warrant and verified that the box contained four gallon-sized bags of crystal methamphetamine.  On October 5, the package was delivered and recovered at the Vo's California residence by DEA and FBI agents.  Petitioner Vo and Brenda Vo were arrested at Honolulu Airport on October 6, 2002.  They were indicted on October 9, 2002 on two counts: (1) conspiracy to distribute and possess with intent to distribute more than fifty grams of methamphetamine; and (2) aiding and abetting in the possession with intent to distribute more than fifty grams of methamphetamine.

On April 17, 2003, Brenda Vo pled guilty to Count 1 of the indictment.  In her plea agreement, Brenda Vo admits that she was married to Petitioner Vo in 2001 and 2002 and that she was aware that Petitioner Vo was distributing methamphetamine.  See Brenda Vo Plea Agreement at ¶ 8.  She admits that on October 3, 2002, she arranged to ship by Federal Express a package containing approximately fourteen pounds of methamphetamine at the request of her husband.  She admits to using a false name to ship the drugs to California.  Id.

**STANDARD**

Pursuant to Section 2255, a court must vacate and set

aside a judgment and discharge the prisoner, or resentence the prisoner, or grant a new trial, or correct the sentence, if the court finds any one of the following: the judgment was rendered without jurisdiction; the sentence imposed was not authorized by law or otherwise open to collateral attack; or there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.  28 U.S.C. § 2255.

A habeas corpus petitioner must make two showings to succeed on an ineffective assistance of counsel claim.  First, he must demonstrate that counsel's performance was deficient. Strickland v. Washington, 466 U.S. 668, 687 (1984).  Establishing deficient performance requires proving that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Second, the petitioner must show that the deficient performance prejudiced him by affecting the outcome of his case.  Id.  The petitioner must demonstrate that "but for his counsel's ineffectiveness, the result of his proceedings would have differed."  Riggs v. Fairman, 399 F.3d 1179, 1182 (9th Cir. 2005).

A court shall hold an evidentiary hearing on a motion under Section 2255 "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief."  28 U.S.C. § 2255.  "A court may entertain and determine such [a] motion without requiring the production of the prisoner at the hearing."  Id.  In short,

> The standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.  A hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.

United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984) (citations omitted); Shah v. United States, 878 F.2d 1156, 1158 (9th Cir. 1989); see also United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986) ("Where a prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required.").

      The Ninth Circuit recognizes that even when credibility is at issue, no evidentiary hearing is required if it can be "'conclusively decided on the basis of documentary testimony and evidence in the record.'"  Shah, 878 F.2d at 1159 (quoting United States v. Espinoza, 866 F.2d 1067, 1069 (9th Cir. 1989)).  In addition, judges may use discovery, documentary evidence, and their own notes and recollections of the plea hearing and sentencing process to supplement the record.  Shah, 878 F.2d at 1159.  "Judges may also use common sense."  Id.  The choice of method for handling a Section 2255 motion is left to the discretion of the district court.  See id. (citing Watts v.

United States, 841 F.2d 275, 277 (9th Cir. 1988)).

As discussed below, the Court finds that Petitioner's arguments lack merit. Because the record conclusively shows that Petitioner is not entitled to relief, a hearing is not warranted in this case.

## DISCUSSION

### I. Alleged Jury Tampering Incident

Petitioner argues that he was denied effective assistance of counsel when his attorney, Assistant Federal Public Defender (AFPD) Weight, failed to pursue an alleged jury tampering incident that was reported to the Court. A juror reported that while in the federal building cafeteria he overheard someone he thought might be a DEA witness to the case saying that one of the jurors was frowning. See Government Response Exh. "B" at 3-3. Out of the presence of the jury, the Court brought the incident to the attention of the parties and instructed counsel to caution their witnesses to exercise discretion when eating in the cafeteria. Id. at 3-4. The Court then asked whether counsel wanted to do anything more about the incident and AFPD Weight responded, "I think all that would do would be to emphasize the matter. I think it's best left alone." Id. at 3-5. The Court stated, "I don't think there's been any harm at this point." Id.

Regarding the first prong of the Strickland test,

deficient performance by counsel, the Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential.  Strickland, 466 U.S. at 689.  The court went on to state,

> [Counsel's] strategic choices made after thorough investigation of law and facts relevant to plausible oppositions are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Id. at 690-91.  Petitioner Vo contends that AFPD Weight's failure to investigate and mitigate the effect of the juror's reported overhearing of an ex parte comment by a witness was unreasonable and fell below prevailing professional norms.  The Court presumes that when Petitioner Vo argues that his counsel should have "pursued" the alleged jury tampering incident, he means that AFPD Weight should have requested a hearing about the incident to assess its prejudicial impact as provided by Remmer v. United States, 347 U.S. 227, 230, 74 S. Ct. 450, 451 (1954).[1]

AFPD Weight indicated that the reason he declined to pursue additional inquiry was that he did not want to emphasize

---

[1] In Remmer, the United States Supreme Court held in cases involving jury tampering, the court must hold a hearing to determine the circumstances of the tampering, impact upon the juror, and whether or not it was prejudicial.  347 U.S. at 229-30.

7

or draw any more attention to the matter.  See Government Response Exhs. "B" at 3-5, "C" at ¶ 12.  In other words, AFPD Weight made a strategic decision that the potential prejudicial impact of the incident against his client was outweighed by the prejudice that may arise by emphasizing it any further to the jury.  Moreover, AFPD Weight's decision was objectively reasonable.  The Court contemporaneously observed that it did not appear that there was any harm done at that point.  See Government Response Exh. "B" at 3-5. Giving AFPD Weight the large measure of deference required by Strickland, the Court finds that AFPD Weight's decision not to pursue any further inquiry was within the range of reasonable professional judgment.

Petitioner Vo also asserts that AFPD Weight should have argued that Vo was entitled to a presumption of prejudice. Remmer held that a presumption of prejudice applies if the case involves jury tampering.  347 U.S. at 329-30. The Ninth Circuit distinguishes between jury tampering and "more prosaic kinds of jury misconduct." United States v. Dutkel, 192 F.3d 893, 895 (9th Cir. 1999).  Jury tampering is defined as "an effort to influence the jury's verdict by threatening or offering inducements to one or more of the jurors." Id.  The Dutkel court went on to explain, "Jury tampering is a much more serious intrusion into the jury's process and poses an inherently greater risk to the integrity of the verdict.  While we presume that jurors will disregard the advice of friends and ignore other ex parte contacts, we can

8

indulge no such presumption where jury tampering is involved." Id. In instances of jury tampering, the presumption of prejudice attaches and the burden shifts to the government to demonstrate a lack of prejudice. See Remmer, 347 U.S. at 229. By contrast, the defendant bears the burden to show prejudice in cases involving other types of improper ex parte juror contacts. See Dutkel, 192 F.3d at 896.

The comment that the juror overheard in the instant case does not fall within the category of jury tampering. It was not an effort to intimidate or induce the juror or jurors to reach a particular decision. Instead the overheard comment in the cafeteria that one of the jurors was frowning, which may not have been directed at the jurors, is akin to the prosaic ex parte contacts that do not trigger the Remmer presumption. See e.g., Smith v. Phillips, 455 U.S. 209, 212-221 (1982)(juror applied for investigative position at District Attorney's Office during trial); United States v. English, 92 F.3d 909, 913-14 (elevator encounter between juror and victims); United States v. Maree, 934 F.2d 192, 202 (9th Cir. 1991) (juror's contact with friends who encouraged her to convict defendant); United States v. Madrid, 842 F.2d 1090, 1092 (9th Cir. 1988)(court clerk consoled juror after another juror swore at her). Because the overheard comment in the cafeteria was an ordinary ex parte contact and not an incident of jury tampering, there is no presumption of prejudice and Petitioner Vo had the burden of demonstrating actual

9

prejudice.  It was not deficient performance for AFPD Weight to decline to argue that the government bore the burden of showing a lack of prejudice.  Such a decision was legally correct and professionally reasonable.

Even if AFPD Weight had erred in failing to request a hearing after the ex parte comment was raised to the parties, Vo has not met his burden under the second prong of Strickland-- demonstrating that he was prejudiced.  Establishing actual prejudice requires that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Petitioner Vo fails to establish that had a hearing about the incident been conducted, there is a reasonable probability that the outcome would have been different.  On its face, it is unclear in whose favor the overheard comment tilts.  On the one hand, a juror could interpret the comment as an expression of concern that the government's argument was not being well-received.  On the other hand, a juror's frown could belie disgust or disbelief in whatever was being discussed.  The statement is sufficiently ambiguous that it is difficult to pinpoint what, if any, prejudicial impact it would have on jury deliberations or impartiality.  Moreover, the Court reiterates the belief articulated by the Ninth Circuit that jurors will disregard

10

ordinary ex parte contacts.  See Dutkel, 192 F.3d at 895.  Unlike bribes, threats, or acts of intimidation that clearly prejudice the defendant, a statement by a government witness such as the one overheard in the cafeteria are not inherently prejudicial. Petitioner Vo does not present any additional evidence showing that the ex parte comment overheard by a juror prejudiced him. Vo's conclusory allegation that the ex parte comment "eventually affected the jury's verdict" is not supported by the record and is insufficient to establish actual prejudice.

      The Court concludes that Petitioner Vo was not denied effective assistance of counsel with respect to the ex parte comment made by a government witness and overheard by a juror during the course of trial.

**II.   Marital Communications Privilege**

      Petitioner Vo's second ineffective assistance of counsel claim alleges that AFPD Weight failed to object to his wife's testimony, which Vo argues was subject to the marital communications privilege.

      At Petitioner Vo's trial, Brenda Vo testified to two occasions in 2001 on which Petitioner Vo asked her to send a box from California to Honolulu that she suspected contained drugs. She testified that on these occasions, Petitioner Vo handled the box in a manner to avoid leaving fingerprints on the box, and that the sender's name was written as "Linda Chang."  See

Government Response Exh. "A" at 2-218 to -220. Brenda Vo also testified that in October of 2002, Petitioner Vo asked her to mail another box from Honolulu to California under the fictitious name, Linda Chang. When she asked why he could not send it himself, Petitioner Vo responded that it would not look good if he sent it. Id. at 2-233. She told him that she did not want to take the chance of getting in trouble while on probation. She also expressed concern about sending the box addressed to Gabriella Vo, Petitioner Vo's minor daughter. Id. Brenda Vo testified that she was concerned about Gabriella receiving the box because Brenda thought it contained drugs. Id. at 2-234. Brenda Vo eventually agreed to send the box as instructed from the Mail Boxes, Etc. store.

The scope of evidentiary privileges in criminal cases is determined by federal common law. See Fed. R. Evid. 501.[2] The common law recognizes two distinct privileges arising from the marital relationship. The first permits a witness to refuse to testify against his or her spouse. See Trammel v. United States, 445 U.S. 40, 53 (1980); United States v. Bolzer, 556 F.2d 948, 951 (9th Cir. 1977).[3] The second is the marital

---

[2] Rule 501 provides, in part, "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

[3] This privilege is not at issue in this case because Brenda Vo elected to testify against Petitioner.

communications privilege, which bars testimony concerning statements privately communicated between spouses. See In re Grand Jury Investigation of Hugle, 754 F.2d 863, 864 (9th Cir. 1985); United States v. Lustig, 555 F.2d 737, 747 (9th Cir. 1977) cert. denied, 434 U.S. 926 (1978). The privilege extends to words or acts intended as a communication to the other spouse during a valid marriage.  See Lustig, 555 F.2d at 747-48. The privilege may be asserted by either spouse to prevent testimony regarding communications between spouses. See United States v. Montgomery, 384 F.3d 1050, 1058-59 (9th Cir. 2004).  The marital communications privilege will be waived if an objection is not timely made. See United States v. Figueroa-Paz, 468 F.2d 1055, 1057 (9th Cir. 1972).

In United States v. Marashi, the Ninth Circuit recognized a "partnership in crime" exception to the marital communications privilege.  913 F.2d 724, 731 (9th Cir. 1990).  In Marashi, the defendant directed his wife to help him underreport income on their joint tax returns, and she willingly complied. Id. The Marashi court held that "the martial communications privilege does not apply to statements made in furtherance of joint criminal activity."  Id.  The exception has its limits.  If the wife "has not become a participant at the time of her communications, no joint criminal activity has been undertaken," and the joint criminal activity exception does not apply. United States v. Montgomery, 384 F.3d 1050, 1060 (9th Cir. 2004).  The

13

Ninth Circuit has adopted the position that the testifying spouse need not be indicted or prosecuted for the underlying criminal activity for the joint criminal activity exception to apply:

> The policies behind the joint criminal participation exception are concerned with the actual participation by both spouses in a crime, not with their joint prosecution for that crime. The exception arises out of a careful balancing of the policies behind protecting the intimacy of private marital communications and the public policy of getting at the truth and attaining justice.... Whether the spouse testifying has been indicted and is being prosecuted for his or her participation is a prosecutorial prerogative that is not material to the policies at issue here.

Marashi, 913 F.2d at 730 (quoting United States v. Parker, 834 F.2d 408, 412 (4th Cir. 1987), cert. denied, 485 U.S. 938, 108 S.Ct. 1118 (1978))

      Petitioner Vo asserts that Brenda Vo's testimony about their private communications was covered by the marital communications privilege.[4]  It is clear, however, that the communications between Petitioner Vo and Brenda Vo were made in furtherance of joint criminal activity.  Petitioner Vo directed Brenda to help him send boxes of methamphetamine and instructed her to use the fictitious name of Linda Chang.  Brenda Vo admits in her plea agreement to knowing that her husband was distributing methamphetamine at the time.  She saw how he handled the boxes to avoid leaving fingerprints.  She believed the boxes

---

[4] In his appeal to the Ninth Circuit, the court ruled that because Petitioner Vo failed to assert the marital communications privilege during pretrial conference or at trial, he waived the privilege. See United States v. Vo, 413 F.3d 1010, 1017 (9th Cir. 2005).

contained drugs and protested the request for her to mail a box for Vo on a couple of occasions because she did not want to jeopardize her probation. She testified to handling the box given to her by Petitioner Vo in September of 2001 so that she would not get her fingerprints on the box.  She ultimately agreed to send out the boxes on at least three separate occasions in 2001 and 2002 under the fictitious name, Linda Chang.  Brenda Vo pled guilty to conspiring to possess with the intent to distribute more than fifty grams of methamphetamine.  Although the indictment to which Brenda Vo pleaded guilty only alleged overt acts that took place in 2002, she has admitted ample facts and the record contains sufficient evidence to convince the Court that she had become a participant in joint criminal activity with her husband as early as 2001.  Thus, the Court finds Brenda Vo had become a participant in joint criminal activity during the entire time frame during which the marital communications in her testimony took place.  Accordingly, her testimony about conversations between herself and Petitioner Vo regarding mailing the boxes in both 2001 and 2002 were in furtherance of joint criminal activity and were admissible under the "partnership in crime" exception to the marital communications privilege. See Marashi, 913 F.2d at 731.

        Any objection to the testimony by AFPD Weight would not have prevented the admission of Brenda Vo's testimony.  Thus, by failing to object, AFPD Weight's performance was not deficient

and did not result in prejudice to Petitioner Vo.  Because the marital communications privilege did not apply to Brenda Vo's testimony, it is unnecessary for the Court to decide whether AFPD Weight's decision not to object to Brenda Vo's testimony was a reasonable tactical decision executing the Vos' agreed upon trial strategy.  Petitioner Vo was not denied effective assistance of counsel.

In light of all the circumstances, Petitioner's counsel's performance was not outside the wide range of professionally competent assistance, and Petitioner has not overcome the presumption that his counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  See Strickland, 466 U.S. at 689-690.  Accordingly, Petitioner's claim for ineffective assistance of counsel fails.

## CONCLUSION

For the foregoing reasons, the Court DENIES Petitioner Vo's Section 2255 motion to vacate, set aside, or correct the sentence.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 28, 2007.



_____
Alan C. Kay
Sr. United States District Judge

RICK VO v. UNITED STATES, Civ. No. 07-00052 ACK-BMK; Cr. No. 02-00411 ACK(01); Order Denying Vo's Section 2255 Petition to Vacate, Set Aside, or Correct Sentence.