ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 01 2007

at __ o'clock and __ min __ M.
SUE BEITIA, CLERK

1.  Rick Vo #95795-012
    Taft Correctional Institution
2.  PO Box 7001
    Taft, CA 93268-7001
3.
    Petitioner-Defendant
4.  (in Pro Se)

5.
                    UNITED STATES DISTRICT COURT
6.
                         DISTRICT OF HAWAII
7.
                                            Civil No. 07-00052 ACK
8.  UNITED STATES OF AMERICA,          )    Case No. 02-00411 ACK
                                       )
9.           Plaintiff-Respondant,     )
                                       )    MEMORANDUM OF LAW IN
10.          v.                        )    SUPPORT OF MOTION UNDER
                                       )    28 U.S.C. §2255 TO VACATE,
11. Rick Vo,                           )    SET ASIDE OR CORRECT
                                       )    SENTENCE
12.          Petitioner-Defendant,     )
    _____)
13.

14.             MEMORANDUM OF LAW IN SUPPORT OF MOTION
                  UNDER 28 U.S.C. §2255 TO VACATE,
15.                SET ASIDE OR CORRECT SENTENCE

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

                              - 1 -

MEMORANDUM OF LAW IN SUPPORT OF MOTION
UNDER 28 U.S.C. §2255 TO VACATE,
SET ASIDE OR CORRECT SENTENCE

### INTRODUCTION

Vo raises one (1) ground for relief: Denial of Effective Assistance of Counsel Due to Counsel's Failure to Request a Mistrial Based on Jury Intimidation of Tampering.

Vo specifically alleges that an incident of jury intimidation or tampering occurred during his trial, which raised a presumption of prejudice under Supreme Court and the Ninth Circuit precedent. Vo's trial counsel, Michael Weight, was appraised of this incident; but, due to lack of awareness of the case law in this area, he failed to request a mistrial and/or evidentiary hearing on the matter as the case law above required. Had counsel done the former and/or latter, a mistrial would have been declared as the government did not - and could not - overcome the presumption of prejudice from the incident of jury intimidation or tampering.

These allegations, if true, would be sufficient to establish that counsel's performance was deficient and that Vo was prejudiced thereby. As this establishes a claim of Ineffective Assistance of Counsel under Strickland v. Washington 466 U.S. 668 (1984), Vo argues he is therefore entitled to an evidentiary hearing so that he can establish this claim.

### FACTS

The government arrested Vo together with his wife, Brenda Vo ("Brenda"), on October 6, 2002. Three days later, the government indicted the Vos in two joint counts to possess over fifty grams of methamphetamine with intent to distribute and with aiding and abetting each other in the possession of over fifty grams of

1.  methamphetamine with intent to distribute.  The above charges
2.  stemmed from Brenda'a arrest in connection with her having mailed
3.  a box containing methamphetamine from a Mail Boxes Etc. in Hawaii
4.  to the Vo's residence in Playa del Rey, California in October of
5.  2002.
6.  Brenda pled guilty to the conspiracy charge on April 17,
7.  2003; in exchange, the government moved to dismiss the aiding and
8.  abetting count against her.  After her plea, the government filed
9.  a superceding indictment, which expressly noted that Brenda was
10. not a defendant.
11. The superceding indictment essentially replicated the
12. original conspiracy count, accusing Vo, in count 1, of conspiracy,
13. from about June, 2001 to about October 6, 2002, with Brenda and
14. unnamed others to distribute and possess with the intent to
15. distribute over fifty grams of methamphetamine in violation of
16. 21 U.S.C. §841 (a)(1).  Similarly, count 2 of the superceding
17. indictment replicated the original aiding and abetting charge,
18. accusing Vo of aiding and abetting Brenda on or about October 4,
19. 2002, in the possession with the intent to distribute over fifty
20. grams (to wit, approximately fourteen pounds) of methamphetamine
21. in violation of U.S.C. §2 and 21 U.S.C. §841 (a)(1).
22. On May 14, 2003, Vo's trial began.  On the second day of the
23. trial, after the jury had been selected (but out of their
24. presence during a recess) the court informed Vo's counsel,
25. Michael Weight, and the Assistant United States Attorney, Tom
26. Muehleck ("AUSA Muehleck"), that it received a report from juror
27. number three (3), Mr. Hanki ("Mr. Hanki"), that he heard someone
28. in the court cafeteria, whom he thought might have been a DEA

- 3 -

1. witness, saying that one of the jurors was "frowning" (Exhibit
2. "A") (Declaration of Rick Vo in support of §2255 Motion) ("Vo's
3. Decl"). ¶ 2 [1]

4.   The court noted that the circumstances surrounding this
5. incident was not "that clear," (Id.), and asked both Mr. Weight
6. and AUSA Muehleck whether they "want(ed) to do anything more
7. about this." (Id.). Mr. Weight responded that he thought "all
8. that would do would be to emphasize the matter," and that he
9. thought "it's better left alone." (Id.). Mr. Weight did not
10. know at that time the above incident involving Mr. Hanki had
11. raised a presumption of prejudice under Supreme Court and Ninth
12. Circuit precedent and that it was grounds for a mistrial.
13. (Id. at ¶ 3).

14.   AUSA Muehleck did not directly respond to the court's
15. question above. Rather, as to the question of whether the person
16. that Mr. Hanki overheard in the federal court cafeteria was in
17. fact a DEA witness, he "object(ed) to that on the record without
18. more information." (Id. ¶ 2). The court concluded the
19. discussion by saying "the juror [(Mr. Hanki)] thought it was a
20. DEA witness, but he wasn't sure. He didn't have a precise
21. recollection." (Id.).

22.   Thereafter, Vo's trial immediately resumed. (Id.) No
23. further discussion of Mr. Hanki or the incident above arose and
24. no one ever questioned Mr. Hanki or any other jurors about the
25. matter during Vo's trial. (Id. at ¶ 4). The jury ultimately
26.

27. 1/ Attached to Vo's Decl. as "Exhibit A" is a true and correct
copy of excerpts of Vo's trial transcripts.
28.

1. found Vo guilty of aiding and abetting Brenda Vo as charged in

2. count 2 of the superceding indictment. The jury failed to return

3. a verdict on the alleged conspiracy charged in count 1.

4.     On December 15, 2003, the District Court sentenced Vo to

5. 262-months imprisonment and a ten-year term of supervised release.

6. Vo's appeal to the Ninth Circuit was denied on June 27, 2005. See

7. U.S. v. Vo, 413 F.3d 1010 (Ninth Circuit 2005). His petition for

8. writ of certiorari was likewise denied by the Supreme Court on

9. November 28, 2005.

10. **ARGUMENT**

11. I.    THE GOVERNING LAW

12.     A. 28 U.S.C. § 2255

13.         1. Standard for Review

14.     28 U.S.C. § 2255 provides:

15.         "A prisoner in custody under sentence of a
court established by Act of Congress claiming

16. the right to be released upon the ground that
the sentence imposed in violation of the

17. Constitution or Laws of the United States, or
that the court was without jurisdiction to

18. impose such sentence, or that the sentence was
in excess of the maximum authorized by law, or

19. is otherwise subject to collateral attack, may
move the court which imposed sentence to vacate,

20. set aside or correct the sentence."

21.     2. Evidentiary Hearing

22.     An inmate filing a claim for relief under section § 2255 is

23. entitled to an evidentiary hearing "unless the motion and the

24. files and the records of the case conclusively show that the

25. prisoner is entitled no relief." U.S. Leonti, 326 F.3d 1111,

26. 1116 (9th Cir. 2003).

27.     The Ninth Circuit has characterized this standard as

28. requiring an evidentiary hearing where "the movant has made

1. specific allegations, if true, state a claim in which relief could
2. be granted." Id. This standard specifically "entails assuming
3. the truth of [the movant's] factual allegations." Id. at 1121.
4.      3. Timeliness
5.    A prisoner has one year from "the date on which the
6. judgement of conviction becomes final" to file § 2255 motion.
7. 28 U.S.C. § 2255 ¶ (b)(1). The present petition is timely as
8. Defendant's conviction became final on November 10, 2005 when the
9. Supreme Court denied his Petition for Writ of Certiorari.
10.   B. INEFFECTIVE ASSISTANCE OF COUNSEL
11.    It is well settled that the Sixth Amendment guarantees
12. criminal defendant's the right to effective assistance of counsel.
13. Strickland, supra.
14.    To prevail on such a claim under Strickland, a petitioner
15. must establish (a) that his counsel's representation was outside
16. the wide range of professional competent assistance, and (b) that
17. he was prejudiced by reason of his counsel's representation. Id.
18. 1t 668. An attorney's performance is deficient if it falls below
19. an "objective standard of reasonableness." Id. See also Leonti;
20. 326 F.3d at 1120.
21.    The concept of ineffective assistance of counsel applies in
22. the context of counsel's handling of jury matters. See Fields
23. v. Woodford, 281 F.3d 963, 977-73 (9th Cir, 2002)(citing cases);
24. Government of Virgin Islands v. Weatherwas 20 F.3d 572 (3rd Cir,
25. 1994); Davidson v. U.S, 951 F.Supp. 555 (W.D. Pa. 1996).
26. II. VO WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
     DUE TO COUNSEL'S FAILURE TO REQUEST A MISTRIAL
27.      BASED ON JURY INTIMIDATION OR TAMPERING.
28.    The questions posed in the present § 2255 motion are (1)

- 6 -

1. whether there was in fact an instance of jury intimidation or
2. tampering during Vo's trial; (2) if so, whether Vo's counsel was
3. deficient in failing to raise the issue by requesting a mistrial
4. and/or, at minimum, an evidentiary on the issue; and (3) whether
5. Vo was prejudiced as a result.  Vo will discuss each of these
6. issues in turn below.

7.      A. Jury Intimidation or Tampering

8.      The Sixth Amendment guarantees criminal defendants  a verdict
9. by impartial and indifferent jurors.  U.S. v. Rutherford, 371
10. F.3d, 634, 641 (9th Cir, 2004).  To protect this right, in
11. Mattox v. U.S., 146 U.S. 150, 151, 13 S. Ct. 50, 36 L. Ed. 917
12. (1892), the Supreme Court held that "[p]rivate communications,
13. possibly prejudicial, between jurors and third parties or
14. the officer in charge, are absolutely forbidden and invalidate the
15. verdict, at least unless their harmlessness is made to appear."
16. See also Rutherford, Id.

17.      Subsequently, in Remmer v. U.S., 347 U.S. 227, 74 S. Ct. 450,
18. 98 L. Ed. 654 (1954)("Remmer I"), the court established that any
19. "private communication, contact or tampering, directly or
20. indirectly, with a juror during a trial about the matter pending
21. before the jury" is deemed "presumptively prejudicial" and placed
22. a heavy burden on the government to rebut the presumption by
23. proving that the error was harmless beyond a reasonable doubt.
24. Id. at 229, 74 S. Ct. 450.  See also Rutherford, Id.  In
25. Rutherford, the Ninth Circuit stated:

26.          "The importance of the application of the
             presumption cannot be overstated, where a juror
27.          is improperly contacted during a trial, the
             potential for prejudice is significant, but it
28.          is often very difficult for the defendant to

1.       prove."

2.  Id. at 641 (citation omitted).

3.       In Remmer v. U.S., 350 U.S. 377, 382, 76 S. Ct. 425, 100

4.  L.Ed. 435 (1956) ("Remmer II"), the court suggested that only

5.  "unathorized intrusions" into the "sanctity of the jury's right

6.  to operate as freely as possible" purposefully made might trigger

7.  the presumption of prejudice.  Id. at 382, 76 S. Ct. 425.

8.  Rutherford, Id.  Shortly thereafter, however, in a case in which

9.  intent was admittedly lacking the court clarified the issue

10. holding that, under Remmer II, the "fact that the intrusion was

11. unintentional does not remove the effect of the intrusion."

12. Gold v. U.S., 352 U.S. 985, 77 S. Ct. 378, 1 L.Ed. 2nd 360 (1957)

13. (per curiam) (emphasis added).

14.      The Ninth Circuit has applied the Mattox/Remmer rule in a

15. number of cases and,  in line with Gold, have consistently stated

16. that the appropriate inquiry is whether the unauthorized conduct

17. or contact is "potentially prejudicial" not whether the parties

18. alleged to  have tampered with the jury did so intentionally.

19. See Rutherford, 371 F.3d at 642 (citing cases).  See also

20. U.S. v. Elias, 269 F.3d, 1003, 1020 (9th Cir. 2001)(noting that

21. courts look not to the "intent of the individual alleged to have

22. tampered with the jury," but rather to "the jurors' perceptions

23. of the conduct at issue.").

24.      In short, in cases in which the circumstances suggest that

25. the improper communication or contact is "sufficiently serious"

26. that it might prejudice the jurors, the Ninth Circuit has

27. afforded the presumption of prejudice; in the case of other more

28. "prosaic kinds of jury misconduct," or "where the improper

- 8 -

contact with jurors has been de minimis," the court has not.
Rutherford, 371 F.3d at 643. See id. (citing cases discussing the
difference). See also, Caliendo v. Warden of California Mens
Colony, 353 F.3d, 1147, 1151-52 (9th Cir. 2004).   In the latter
circumstances, "courts have departed from Mattox and placed the
burden on the defendant to establish prejudice." Id.   See also
U.S. v. Brande, 329 F.3d 1137, 1176077 (9th Cir. 2003) (same).

     The case law above compels the conclusion that the improper
contact involving Mr. Hanki in this case was "sufficiently
serious" and thus raised a "presumption of prejudice" and
required that an evidentiary hearing be held on the matter.
Rutherford and Brande are particularly instructive here.

     In Rutherford, for example, the defendant obtained post
trial affadavits from various jurors pertaining to events that
occurred during the trial.   Therein, one juror stated:

          "[D]iscussion as to possible retaliation against
          jurors by certain IRS auditors resulted because there
          were a number of IRS employees who attended the trial
          were present every day, **and every time I looked at them
          they seemed to be glaring at the jury.** This was very
          unsettling to some of (sic) the jurors."

Rutherford, 371 F.3d at 638 (emphasis added).

     Based on these affadavits, the defendant in Rutherford filed
a "rule 33" motion for a new trial wherein he argued that he was
entitled to this relief under the Mattox/Remmer line of cases.
Id. at 639.   The district court held a hearing on the issue.
Id.   The district court struck portions of the jurors' affadavits
on the basis that much of the statements therein were
inadmissible under "Fed. R.Evid. 606(b)" as constituting evidence
of the jurors' "mental processes" concerning "the verdict." Id.

- 9 -

1.   The only statement that the court found that could provide the

2.   basis for a Mattox/Remmer claim was the juror's "statement

3.   regarding the presence of so many 'glaring' IRS agents in the

4.   courtroom." Id.

5.       The district court ultimately ruled, however, that because

6.   the defendant could not prove that the "glaring" agents "intended

7.   to intimidate or influence the jurors," the agents' conduct had

8.   to be "considered as a more prosaic form of contact with the

9.   jurors" and that the defendants thus had the burden of proving

10.  actual prejudice. Id. Because the defendants could not meet this

11.  burden, the court denied their motion for a new trial. Id.

12.  The Ninth Circuit reversed and remanded for a further evidentiary

13.  hearing.

14.       The Rutherford court first noted that the conduct at issue

15.  was that of "government agents," and that courts have emphasized

16.  that "judges should exercise additional caution when government

17.  employees are involved because of the heightened concern that the

18.  jurors will not 'feel free to exercise [their] functions' with

19.  the government looking over [their] shoulder[s].'" Id. at 643

20.  (citation omitted). Indeed, the court noted that the Ninth

21.  Circuit has held "even seemingly innocuous juror conversation

22.  and contact between such individuals and a juror can trigger a

23.  presumption of prejudice." Id.

24.       The court specifically ruled "that the district court erred

25.  in concluding the defendant must prove that the individual[ ]

26.  [FBI] agents involved **intended** to influence or prejudice the

27.  jurors in order for the presumption of prejudice to apply." Id.

28.  at 644 (emphasis added). The court stated that "[t]he

- 10 -

1.  appropriate inquiry is whether the unauthorized conduct 'raises a

2.  risk of influencing the verdict,'...or had an adverse effect on

3.  the deliberations." Id. (citation omitted). But because the

4.  court also ruled that the district court had also "erred [under

5.  Fed. R.Evid. 606(b)] in limiting juror testimony at the

6.  evidentiary hearing to the existence of such conduct at the same

7.  time it occurred," and the record was thus "incomplete," it did

8.  not determine whether the presumption should apply and whether the

9.  jurors were adversely influenced by the agents' conduct at trial.

10. Id.

11.      Rather, the court left the latter task to the district court

12. following the holding of a "further evidentiary hearing." The

13. court expressed "no opinion as to the results on remand." Id.

14. However, the court did state "that standing alone, the mere

15. attendance of seven to 10 agents at trial is not grounds for

16. applying the presumption of prejudice, or, for that matter,

17. granting a new trial." Id. The court nevertheless concluded that

18. "glaring and staring at jurors on a regular basis may be another

19. matter." Id. (emphasis added).

20.      In Brande, after the defendant had been found guilty, but

21. before sentencing, he learned that during the course of the trial

22. that a juror was overheard (by other members of the jury) saying

23. "something to the effect of he was unable to find anyone guilty

24. because of his religious beliefs.", 329 F.3d at 1175. Two jury

25. members reported this to "either a clerk of the court or court

26. intern," who "then approached that juror and asked him whether he

27. would be unable to find a defendant guilty of a crime." Id. The

28. juror in question responded that "he would not be unable to do

1. so." Id.

2.     Five months after learning of the latter incident, counsel
3. brought it to the court's attention and "suggested that the court
4. hold an evidentiary hearing on the matter." Id. The court
5. refused to hold a hearing on the basis that "the defense had
6. waited so long before bringing the matter to its attention." Id.
7. at 1176. The Ninth Circuit reversed and remanded with
8. instructions that the district court hold an evidentiary hearing
9. to determine whether "the contact between the juror and the court
10. employee" required a new trial.

11.     The Brande court noted    the   Ninth Circuit's rule that the
12. "more prosaic kinds" of conduct did not raise a presumption of
13. prejudice or require a hearing. The court then stated:

14.     "To determine whether an evidentiary hearing must
be held, [under Remmer I], th court must consider the
15. content of the allegations, the seriousness of the
alleged misconduct or bias and the credibility of the
16. source...If these factors warrant holding a hearing,
a hearing should be held unless the court already knows
17. 'the exact scope and nature' of the improper contact."

18. Id. at 1176-77 (citations omitted) (emphasis added).

19.     The "credibility" of the allegations in Brande were "not in
20. doubt, only their seriousness." Id. Three factors lead the
21. court to conclude that the allegations were "serious enough" to
22. raise a presumption of prejudice under Remmer I, and thus
23. "warrant a hearing":

24.     "First, the conduct was between a juror and court
personnel. The defendants are correct that juror is
25. more susceptible to improper influence from a court
officer than from spectators or parties to the case.
26. See Parker v. Gladden, 385 U.S. 363, 365, 87 S. Ct.
468 L.ED. 2d 420 (1996) (percuriam). Second, the
27. communication concerned the central duty of a juror-
deciding guilt - and may have had the effect, intended

28.

- 12 -

or not, of influencing the juror's exercise of that duty.  See United States v. Plunk, 153 F.3d 1011, 1023 (9th Cir. 1988) (distinguishing "Substantive contact" from contact related to providing for physical need of jurors).  Third, because the ex parte contact came to light only after the verdict, there was no opportunity for a curative instruction, 197 F.3d at 981 (9th Cir. 1999) (citing adequate curative instruction in finding the jury not tainted); United States v. English, 25 C.C.P.A. 770, 92 F.3d 909, 914 (9th Cir. 1996) (same).

"The government may turn out to be correct that the communication was not prejudicial.  In this instance, however, it is impossible to know whether there was prejudice without an evidentiary hearing."

Id. (citation omitted) (emphasis added).

Turning to the present case, as in Brande, the "contact" and "credibility" of the allegations of improper contact here are not (and cannot be) "in doubt, only their seriousness.[3]  Id. at 1176-77.  Three specific factors compel the conclusion that the improper conduct here was "sufficiently serious" to raise a 'presumption of prejudice.'"

First, the conduct at issue was that of "government agents."[4]  This, as noted, was a significant factor in both Brande and Rutherford, which lead the court to conclude that further inquiry was necessary.  See id. at 643 ([E]ven seemingly innocuous juror conversations and contact between [government agents] and a juror can trigger a presumption of prejudice").

_____

3/  Indeed, the juror at issue in this case, Mr. Hanki himself brought the improper contact to the court's attention.

4/  Any argument that the government may make as to the record not clearly showing that it was in fact a government agent/witness that Mr. Hanki overheard (as it indicated it would during Vo's trial (TT April 20, 2005 p. 3-6)) would be misplaced, as the Ninth Circuit has made it clear that it is the "jurors' perception" that matters.

- 13 -

1. Second, there was "no...curative instructions" given in this case
2. that could have neutralized any potential harm.  This was another
3. factor that lead the court in <u>Brande</u> to find that the allegations
4. were serious enough in that case to require a hearing.  <u>Id.</u> at
5. 1177.  Third, and perhaps most important, there can be no
6. question that the improper contact in this case "disturbed"
7. Mr. Hanki and caused him concern, which is obvious from the fact
8. he brought it to the court's attention in the first instance.
9. The Supreme Court found this to be a significant factor in
10. <u>Remmer II</u>.  <u>See id.</u> at 427:

> "Smith [(the juror in question)] was disturbed.
> As he later testified, "I always felt whether Mr. Satterly
> said it [(i.e. offered a bribe)] in so many words or not,
> I always felt that money was involved; otherwise why
> would any question be put to me." **So disturbed was Smith
> that he told the trial judge about it."**

<u>Id.</u> (emphasis added).

      Moreover, the improper contact at issue (at least arguably)
"directly concerned the trial."  To be sure the record indicates
that the alleged government agent witness in question was
informing another agent or some other court personnel [5] that a
juror was "frowning" during the course of the trial as evidence
and/or arguments were being presented.  <u>Cf. Brande</u>, 329 F.3d at
1177; <u>Caliendo</u>, 353 F.3d at 1153.

      But regardless, the misconduct here - like the juror
misconduct in <u>Caliendo</u> - went beyond "a mere inadvertent or
accidental contact involving only an exchange of greeting in
order to avoid an appearance of discourtesy."  <u>Id.</u> (citation

_____

5/  The federal "court cafeteria" is of course not open to the
general public.

1. omitted). See also U.S. v. Angulia, 4 F.3d 843, 847 (9th Cir.
2. 1993) (citing cases where the alleged misconduct was not
3. considered serious enough to warrant a hearing which are clearly
4. distinguishable from the case at bar).

5.     Indeed, the  misconduct here very well may have "prevented
6. [Mr. Hanki] from thinking about the evidence or paying attention
7. to the judge's instructions, "Rutherford, 371 F.3d at 642, in
8. that it could have caused him to be more concerned with his
9. facial  expressions and not drawing obviously unwanted attention,
10. thereby, from government agents/witnesses - who had
11. (intentionally or unintentionally) made it clear to him that they
12. were watching for this. See id. ("Jurors must feel free to
13. exercise [their] functions 'with[out] the government looking
14. over [their] shoulder[s].'". (Quoting Remmer I, 347 U.S. at
15. 229.)  In short, the government agents' conduct at issue here was
16. certainly more serious than the "glaring" in Rutherford, which
17. in itself caused the Ninth Circuit to remand, as they affirmatively
18. informed Mr. Hanki they would be "looking" for adverse juror signs.

19.     Accordingly, Vo  has  met  his burden of showing that the
20. misconduct here was "sufficiently serious" to raise a
21. "possibility of prejudice."  Therefore, as the record shows that
22. the district court made no attempt to determine the "exact scope
23. and nature" of the "improper contact,"[6] a presumption of
24. prejudice arose in this case requiring an evidentiary hearing.
25. Brande, 329 F.3d at 1177.

26. _____

27. 6/  To be sure the trial transcript reveals that the court stated
    that the circumstances surrounding the incident "was not that
28. clear."  (TT April 20, 2005 p. 3-6).

1.    B. <u>Counsel's Performance Was Deficient</u>

2.        As noted, Vo has established that the improper juror contact

3.    in his case raised a presumption of prejudice under <u>Mattox/Remmer</u>

4.    which required an evidentiary hearing be held where the government

5.    would have the burden of rebutting this presumption to avoid the

6.    granting of a mistrial. <u>Angulo</u>, 4 F.3d at 846-47. The question

7.    here is thus whether Vo's counsel's performance was deficient in

8.    failing to request the latter. Two cases, <u>Davidson</u> and

9.    <u>Weatherwax</u>, are on point and compel the conclusion that this

10.   question must be answered in the affirmative.

11.       In <u>Davidson</u>, for example, the defendant's counsel learned of

12.   an instance of "juror misconduct" [6], but failed to bring it to the

13.   court's attention or move for a mistrial at that point in the

14.   trial. <u>Id</u>. Counsel testified at an evidentiary hearing that he

15.   failed to do so "because in his opinion, the conduct of the jury

16.   did not constitute juror misconduct." <u>Id</u>.

17.       In response to the defendant's claim of ineffective

18.   assistance of counsel in his § 2255 motion, the government did not

19.   contest the fact that "the juror engaged in premature

20.   deliberation," or that this "constituted juror misconduct

21.   sufficient to warrant declaring a mistrial." <u>Id</u>. (citation

22.   omitted). The government nevertheless contended that trial

23.   counsel's failure to bring the matter "to the court's attention"

24.   did not constitute deficient performance because trial counsel's

25.   failure "resulted from a reasonable trial strategy." <u>Id</u>. at 557-

26.

27.   6/ The specific instance of misconduct was that a member of the
      jury had engaged in pre-mature deliberation and eleven of them
28.   "voted to find [the defendant ] guilty. <u>Id</u>.

- 16 -

58.  The district court rejected this argument for "two distinct
reasons."  Id.

The court first ruled that because counsel testified that he
did know that the juror's actions constituted misconduct, his
failure above resulted from a mistake or misunderstanding of the
law - rather than a "strategic decision," and thus constituted
deficient performance under Strickland, Davidson, 951 F.supp. at
558.  This is consistent with the law in the Ninth Circuit.  See
e.g. Edwards v. LaMarque, 439 F.3d 504, 513 (9th Cir. 2005)
(upholding the district court's finding that counsel's
performance was deficient, where the record revealed that
counsel's error resulted from a "mistake" rather than a
"strategic choice"); U.S. v. Span, 75 F.3d 1383, 1390 (9th Cir.
1996) (Holding that "[c]ounsel's errors...were not a strategic
decision.  They were the result of a misunderstanding of the
law," and were thus unreasonable, which amounted to deficient
performance under Strickland.)

Secondly, the Davidson court ruled that "even assuming that
the court could find some strategic motive underlying" counsel's
failure as mentioned above, any such strategy was "unreasonable"
under the circumstances and thus constituted deficient
performance in any event.  Id.  In so ruling, the court noted
the well established rule that "[r]easonable trial strategy must,
by definition, be reasonable."  Id.  See also Span, 75 F.3d at
1390 (same).

In Weatherwax, counsel also failed to bring an instance of
juror misconduct to the court's attention that occurred during
the defendant's trial.  The specific instance of misconduct

- 17 -

involved juror members reading a prejudicial newspaper article concerning the defendant's trial. Id. at 579. The court noted that "the uncontradicted affadavits, considered as true, reveal[ed] a disregard for the implications of the jurors' activities," and then specifically held thatcounsel's "failure to call the court's attention to the incident based upon indifference fell below the Strickland object standard of reasonableness.  Id.

Here, when asked by the court whether he "want[ed] to do anything more about this," Mr. Weight's response was, "I think all that would do would be to emphasize the matter. I think it's better left alone." (TT April 20, 2005). As the improper contact involving Mr. Hanki in this case raised a "presumption of prejudice," the situation was very serious and, indeed, mandated a hearing under Mattox/Remmer. The record here thus reveals either a complete "disregard for the[se] implications" on Mr. Weight's part, and/or that he made a "mistake" or "misunderstood" (or was totally oblivious of) the law.

Indeed, the situation could not be "emphasized" more as the damage had already been done. Rather than a need to be "left alone" at the time, the law required - at minimum - that a "curative instruction" be given. Cf. Brande, 329 F.3d at 1177 (citing lack of "curative instruction" in finding that a Mattox/Remmer hearing was necessary); Caliendo, 353 F.3d at 1153-54 (Holding that the government rebutted the "presumption of prejudice", in large part because "the judge admonished the jurors not to allow the improper encounter to influence their judgement[,]... and [] all the jurors said that their judgement

- 18 -

1. would not be influenced by the encounter.").

2.     Accordingly, under the cases cited above, Vo has met his

3. burden of showing that Mr. Weight's failure to request a mistrial

4. (and/or a Remmer hearing) in this case fell far "below the

5. Strickland objective standard of reasonable." Weatherwax 20 F.3d

6. at 579.

7.     C. Vo Was Prejudiced by Counsel's Deficiencies

8.     As noted, as the record here stands, "prejudice" must be

9. "presumed." Therefore, if the facts herein are found to be true,

10. Vo has made out a "prima facie" case of ineffective assistance of

11. counsel under the Strickland standard. This entitles Vo to an

12. evidentiary hearing so that he can establish this claim.[7] Cf.

13. Fields, 281 F.3d at 977-78 (ruling that the success of the

14. defendant's claim of ineffective assistance of counsel, as to

15. counsel's handling of a juror misconduct/bias issue, depended on

16. the success of the latter claim, which the court remanded for an

17. evidentiary hearing.); Weatherwax, 20 F.3d at 581 (holding that

18. 

---

19. 7/ At the evidentiary hearing, the government will have the
20. "heavy burden... to rebut the presumption [of prejudice] by
proving that the error was harmless beyond a reasonable doubt,"
21. Remmer I 347 U.S. at 229, and/or it must show Mr. Weight's
decision not to bring the jury misconduct issue to the court's
22. attention (or request a mistrial) was (contrary to Vo's factual
allegations) "the basis of "sound trial strategy." Weatherwax,
23. 20 F.3d at 579-80. Of note, the Third Circuit later ruled, after
the case had returned from the district court, after it remanded
24. in the latter case, that the government had successfully
established that counsel's performance was not deficient as
25. counsel made a "reasonable tactical decision" to not raise the
jury misconduct issue at trial. Government of Virgin Islands v.
26. Weatherwax, 77 F.3d 1425, 1432 (3rd Cir. 1996) Counsel's specific
explanation, which the court found reasonable, was that he did
27. not bring the latter issue to the court's attention or request a
mistrial because he had a "jury that left [him] very happy, with
a very happy feeling." Id. at 1430.
28.

1.  defendant met his burden of establishing prejudice under

2.  Strickland where, due to counsel's deficient performance, a

3.  valid jury misconduct/bias claim in which "proof of actual

4.  prejudice is excused" (or it is "presumed") was not brought to

5.  the trial court's attention.)

6.                          **CONCLUSION**

7.      For the foregoing reasons, Defendant Vo prays that the

8.  relief he requests herein will be granted.

9.

10. Dated: *7-17-07*                    Respectfully Submitted,

11.

12.                          *Ricky Vo*

13.                          Rick Vo
                            Petitioner/Defendant
14.                          (In Pro Se)

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.